Good morning and may it please the court. CB Kirshner on behalf of petitioner appellant Greg Chao and I would like to reserve one minute for rebuttal. The Nevada Supreme Court erred by concluding the evidence was sufficient for a jury to find Mr. Chao guilty of premeditated murder. That was the wrong question. The right question is whether the jury actually convicted Mr. Chao of premeditated murder. And the answer is no for one simple reason. The alternative felony murder theory was the path of least resistance. I thought, I mean, your framing of that standard would be very beneficial to your client. But I thought the cases said that we basically have to just figure out what a hypothetical reasonable jury would have done had it been given the correct instructions, not whether this particular, the particular jury who convicted your client, what they, in fact, did. Am I wrong on that? I think the language is a little ambiguous. Nieder used that language. The U.S. Supreme Court case of Nieder used this language about what a reasonable jury would have done, but that was not a Stromberg error case. That was a case where there was an omitted element from the jury instructions. The Stromberg error that this Court has is a little different. So it's not enough as in Nieder to simply look, was there overwhelming evidence in support of the missing element? There was no missing element here. The jury was charged on two alternative theories, one of which was invalid. Right. But we have, is the case Hedgpeth or whatever that other case is, isn't that involving the same kind of error and the Court did the same kind of, what would a hypothetical reasonable jury have done kind of analysis? No? No. The Courts look more to, and as this Court has applied Hedgpeth versus Pudillo in Riley and in Babb, looking to what the jury actually did. But we don't even need to go so far. When we're talking about the correct standard, the Nevada Supreme Court got it wrong either way. Whatever language is supposed to be used is not the language that the Nevada Supreme Court used. The Nevada Supreme Court applied a sufficiency of the evidence test. Counsel, I have a question about that, because the Nevada Supreme Court relied on its decision in Cortinas for its standard, and in, it wasn't a published opinion, but this Court in the Federal version of Cortinas, which raised essentially the same issues as this, said that the Court had applied the correct legal standard. So I don't know whether that's binding on us, because the Court here relied on Cortinas, but it seems to me that if that's the result in Cortinas about the legal standard that the Supreme Court of Nevada followed, that we should reach the same result here. So why don't you, if you don't mind, move to why a reasonable jury, correctly instructed, would not have convicted your client of premeditated murder? Absolutely, Your Honor. First, I would note that as far as the holding in Cortinas, both by the panel of this Court and in the Nevada Supreme Court, both courts concluded that the evidence there was overwhelming, and there was no finding of overwhelming evidence of premeditated murder and deliberation in Mr. Chau's case. So that's one way to distinguish. Additionally... Right, I was just referring to the legal standard that they applied, not to how it applied to the facts, so... Certainly, Your Honor. And the reason why a reasonable juror would not have found that here is because the path of least resistance would have been a finding of guilt based on felony murder. The prosecution spelled this out very simply for the jury. At the very least, the one fact that was not in dispute was that the victim's clothes were stolen. That makes it a robbery, and according to the prosecution, that, quote, automatically makes it first-degree murder. That's where the jury could have ended their deliberation. There was no need... Except in the closing argument, the prosecutor said if you commit a robbery and someone dies during the robbery, you're on the hook for first-degree murder. If the killing occurs during the perpetration of the robbery. So, at least the prosecutor was arguing the correct standard, even though the... Even though the instruction was incorrect or incomplete. And so, given that argument, why do you think the jury found that the path of least resistance? Well, for two reasons. First, the definition of what is in the perpetration of a robbery was not defined for the jury, despite the defense request for that instruction. And the Nevada Supreme Court, recognizing under Nevada law that that, to be erroneous, would be binding on this court. The felony murder instruction was wrong. It allowed the jury to... I understand that it was wrong, but I'm saying you're arguing to me, at least I understood it, that as a practical matter, the jury would have just found that the easiest way to go. But given the prosecutor's argument, I'm not sure why they would have gone that way. Because those were the facts that weren't in dispute. That the victim's clothes were taken. He was found deceased, wearing only underwear and in socks, with very little blood. And the prosecutor argued that the clothes were removed to sop up the blood, hide the So what evidence is there that this was not premeditated or not deliberate, given the number of blows and the violence of the death? I'm glad that you asked, Your Honor. First of all, while there were a large number of blows here, they were not all equally forceful. The medical examiner testified, and I'd like to provide the citation, specifically at 6ER-1047, that some of the injuries, particularly to the victim's jaw and neck area, were deemed superficial, which puts this case in line with this court's holding in Chambers v. McDaniels, where there were a large number of stab wounds, but they were not all equally serious. Some were superficial. Additionally, the medical examiner, as well as one of the crime scene analysts, recognized that the victim had injuries to the back of his hands and arms, including specifically close to the knuckles, which would suggest this was some sort of combat, that this was a physical altercation that unfortunately escalated. Additionally, as far as evidence of premeditation and deliberation, it's really all speculative, because no one knows what happens in that room that night. What we do know, and what the jury knew for sure, is that there was a robbery because the clothes were taken. Mr. Chau was, in fact, convicted of robbery. And there's simply no other basis for finding premeditation and deliberation between these two gentlemen. There's very little known about the relationship between them, other than one statement that Mr. Adians may have loaned money to Mr. Chau. But Mr. Chau had a plane ticket. He was leaving Las Vegas. If this was just about not repaying $1,500, which was not a large sum of money to either of these men, who were heavy gamblers, that there was simply no basis for this to be a premeditated murder. There was no evidence of motive or intent. And that pervaded the trial. This was a 10-day-long trial with 41 witnesses, but the jury returned a verdict in approximately two to three hours, which again suggests that they took the path of least resistance. The question at the trial was always, who was the perpetrator? That was it. There was very little argument made by either side about the surrounding circumstances, whether it was premeditated or felony murder. And that's because, as the prosecution, now wrongly, but argued at the time, is that it didn't matter, that the jury didn't need to be, did not need to be unanimous as to the underlying theory of liability. If some of them found felony murder and some of them found premeditated murder, it was still a first-degree murder conviction, and that's all that was intended by the prosecution at that time. Okay. And I don't mean to step on anybody. So instruction number 14 that was given, it basically tells the jury that they did not have to come to a unanimous decision on the principle of liability. Is that that's a standard instruction? I mean, is that like a pattern instruction in Nevada? There are no pattern instructions, but yes, I would say it's a standard instruction. It is. And so once that instruction is given and no clarification is given on felony murder, the standard for murder and felony murder, then that's where the error occurs. But as far as the instruction number 14 by itself, you believe that that's a correct statement of Nevada law? It is. Yes. The erroneous instruction was just with regards to the robbery itself. Okay. So what other verdict, I mean, the jury decided that there was a robbery. We know that. Decided that beyond a reasonable doubt. And you're saying that once they decided that there was a robbery, the only other alternative based on this set of instructions, based on the verdict form, is murder one? Yes. And that's exactly what the prosecution argued, that there was no reason to consider second-degree murder or voluntary manslaughter because of the felony murder theory. The prosecution specifically said once that robbery occurs, which we know it did, it is automatically first-degree murder. But they also argued premeditation, did they not? They did not very heavily. They argued, I'd say, both theories lightly but equally because it didn't matter in the prosecution's mind. They were happy to get first-degree murder verdict under either theory. And as they also reiterated that instruction, Your Honor, that the jury did not have to be unanimous. And this is probably completely irrelevant, but I'm curious. He was convicted in Canada of a prior felony. That was never presented to the jury in either the trial or the sentencing, is that correct? In sentencing, it was. It was. Okay. Yes. But the sentencing was just in front of the judge, not the jury. Okay. And they explained that he had prior convictions for, I believe it was theft and extortion, and that's why he was on parole and was not supposed to be in the United States to begin with. Okay. All right. Thanks. Thank you. Okay. Thank you very much. Let's hear from the State. Good morning, Your Honors, and may it please the Court. I'm Deputy Attorney General Jamie Stills, and I represent Respondents at Belize in this matter. Respondents ask this Court to affirm the decision of the lower courts and hold that Chau is not entitled to habeas relief. In December 1997, Chau borrowed a substantial sum of money from Don Idiens. Then, in order to retain that money, Chau deliberately lured Mr. Idiens to his hotel room under the pretense of repayment, but instead proceeded to brutally murder Mr. Idiens. A jury subsequently convicted Mr. Chau of first-degree murder due to his horrific actions. Chau is not entitled to habeas relief because the Nevada Supreme Court correctly concluded pursuant to clearly established federal law, that failure to instruct the jury on afterthought robbery was merely a harmless error. Now, both lower courts, the Nevada Supreme Court and the U.S. District Court, correctly determined that the felony murder instruction merely constituted harmless error. The Nevada Supreme Court made its determination in line with clearly established federal law. Specifically, the Nevada Supreme Court correctly identified the trial court's failure to instruct an afterthought robbery as constitutional error. And when this kind of instructional error occurs, it's subject to harmless error review. Sotomayor, was there any evidence that reasonably could be considered non-afterthought robbery, that is, that the killing occurred during the robbery? Because the prosecutor, in closing, talked — did say, if a killing occurs during the perpetration of a robbery, repeated that phrase twice, which is, I think, a correct statement. Is there any evidence to support that the robbery might have happened during — or that the killing might have happened during the robbery? Absolutely, Your Honor. There's evidence that, again, Mr. Ittian's loaned money to Mr. Chau, which he wanted back. He noted several times to his friends that he wanted to recoup this money from Chau, and obviously was given the information to proceed to Chau's hotel room in order to collect that money. He testified — excuse me, his friends testified that he told them he was specifically going across the street in order to recoup that money. However, obviously, Chau did not repay that money and instead proceeded to murder Mr. Ittian's. Yeah, but that's not a robbery. They had an argument over who was going to pay the money. Chau wasn't going to pay the money. They get into a fight. Chau kills him. And then after he kills him, he's got to do something. So he takes his clothes and his billfold. That's after-the-thought robbery, which is legal — or which is cognizable under Nevada law. But that's not felony murder. So what the jury instruction actually said in terms of robbery is that robbery is an unlawful taking of personal property against the will of the person being robbed by means of force, violence, or fear of injury to obtain or retain possession of the property. In other words, Chau threatening or using this violence in order to retain the money that Mr. Ittian's had loaned him does constitute a robbery. There's also the matter of him potentially taking money from Mr. Ittian's. So not paying a loan is a robbery? Yes, not repaying a loan is done — How do you take it from his person if you're not repaying it to him? So the instruction specifically notes to obtain or retain either one as long as it is done by means of force or violence or fear of injury. So that's the difference. So if I get into a — I just — I'm really having a problem with this. So you — if I have a loan and you and I get into an argument about whether I owe it to you or not, we get into a fight and I get killed or you get killed, that's a robbery? If there is some sort of force or violence or threat. But you don't get killed without that. Right. And so if we're arguing about this, then if you use that force or violence. But besides that, even if that didn't constitute the robbery, there also is the potential for Chau to have taken that money within the course of arguing with and then — He already had the money. I beg your pardon, Your Honor. The money that Mr. Ittian's had on him? Probably. But if he did it after the murder, it's not felony murder? Correct, Your Honor. That's the problem with the afterthought instruction not being included. But there is the suggestion, especially by the prosecutor, that the taking of the additional money, not even just the money that Chau originally borrowed, but taking that additional money would constitute a robbery in the course of a murder, which would mean that it does qualify as before rather than an afterthought robbery. So would you also address opposing counsel's argument that a reasonable jury properly instructed would not have found premeditated murder because of the abrasions on the back of the victim's hands? Yes, absolutely, Your Honor. And the State is very, very much in disagreement on this point because there's a significant amount of evidence that points to a very premeditated, deliberate, willful murder. As an initial matter, again, Chau specifically told Mr. Ittian's to come to his hotel room to collect the money that was owed. This shows there was some sort of premeditation going on where Chau knew that Mr. Ittian's going to come to collect the money and knew that he was not going to be able to repay him. There's also the extensive injuries that were inflicted during the course of the murder. Looking at the medical examiner's analysis, there were significant external and internal injuries, and the medical examiner noted that there was at least a minimum of 12 to 14 strikes to the head and maybe more. This is important because during the course of these blows, which the medical examiner noted over and over again, were extremely heavy. These blows were hard enough to crush Mr. Ittian's skull, to damage his eye socket, to crush the, I believe it's pronounced highway bone that's in the middle of his throat. It lodged skull fragments within the brain. It caused severe bleeding and bruising. These are really, really severe, heavy blows. And that's important because that means that Chau had time, given how heavy he must have been having to hit Mr. Ittian, the time taken to inflict those blows would have been significant. And there was at least 12 to 14, which means Chau had opportunity after opportunity after opportunity after opportunity to think about, to deliberate, to make these gestures willfully. This is also important because Chau cites two chambers, but chambers is extremely distinguishable. Chambers involves a case where the defendant actually had a self-defense theory and there was a lot of evidence that supported the defendant's theory of self-defense. And there was also intoxication, I think, where he said he couldn't form the requisite state of mind. And there's, I didn't see any similar evidence here. Absolutely, Your Honor. In chambers, there was a lot of evidence showing intoxication, drugs in the system, that sort of thing. There's nothing in the record here showing that Chau had anything inhibiting him from making that kind of deliberate, forming that kind of deliberate intent. The other thing is most of the wounds in chambers were superficial. And Chau is attempting to argue that there was some sort of potential offensive wounds going on here. But what the medical examiner said was that there was, I beg your pardon, there was no injuries to the knuckles or fingers that would indicate an offensive punch. Rather, there was some soft tissue injury. And the detectives investigating this noted that any kind of soft tissue injury would not be consistent with an offensive sort of attack on Chau. There was nothing that indicated there was any sort of fight. There was nothing under the nails, no bruising. Nothing that would show that there was any kind of attempt to strike an offensive blow. So again, this is very different from chambers where there was a number of offensive wounds that supported the theory of self-defense. Okay. You would agree, though, that under the Constitution, a defendant has the right to a unanimous verdict for the charge against him? Yes, Your Honor. Okay. And he would, they would, the defendant has a right to a unanimous verdict for each charge that's against him? Yes, Your Honor. And the jury was instructed incorrectly on the difference between felony murder and murder one? There was an incorrect instruction. That's correct. So how do we know that there's a unanimous verdict for either one of these? Well, what this Court has to look to is what a rational jury would have done if it was properly instructed. That's the way to tell what constitutes a prejudicial error. Well, I could argue that a rational jury didn't have enough information to, and two justices of the Nevada Supreme Court thought that the jury didn't have enough evidence to convict beyond a reasonable doubt with a correct instruction. So are they irrational? No, Your Honor. That's a trick question. I'm sorry. No problem. There's just such, such extensive evidence showing that this was very highly premeditated and deliberate. There's also the evidence showing that Chau went upstairs, downstairs, upstairs, downstairs, returning time and again to the victim's body and also placing a plastic bag over Mr. Idion's head, whether that was to hasten the death. I apologize, Your Honor. See, my time is up. May I briefly finish? Thank you, Your Honors. There is evidence showing that Mr. Chau did, in fact, place a plastic bag over Mr. Idion's head, which may have actually hastened his death. These are all very premeditated, deliberate, willful choices that Mr. Chau made over and over and over again that show that he was acting premeditatedly, deliberately, and willfully. And accordingly, respondents ask this Court affirm. Thank you, Your Honors. Thank you very much. Let's see. Is there time for about all of this, but two minutes if there's less than that? Yes. Okay. Thank you, Your Honors. Just a couple brief points.  to the jury. It was not argued to the jury. The first time I've ever heard such a theory was five minutes ago by opposing counsel. So there's no basis to think that the jury may have found this theory that was never presented before. The criminal information charged robbery based on taking of money or clothing. Second of all, as far as the injuries. Counsel, I just want to ask you about that, because while it's reasonable to conclude that the clothing was taken after the murder, or at least possibly during the murder, though, if he didn't die instantly, what about the money? So the money was purely speculative. The last witness to see Mr. Ittians live was a man named Michael Presak, which I may be pronouncing incorrectly. They had been playing poker together when Ittians left, supposedly to go recollect this debt. Mr. Ittians left $700 to $800 of chips on the table. There's no testimony that anyone knew whether or not he had any money on his person, or whether or not any such money was taken. That was purely speculative. The State argued that. I thought the billfold was taken, though. There's no evidence there was even a billfold. His identification and things like that, the victim's ID, were found securely in his truck after the fact. There's no evidence that he was seen with a wad of cash or anything like that. At trial, the State argued that Mr. Chow likely stole money because later that night he bought in again to do more of his own gambling. He had purchased, he had bought in at $5,000 early in the day and $5,000 again later in the day, and they speculated that the second buy-in was with stolen funds. But that was purely speculative. Both of these men were heavy gamblers, and there's no further bank records detailing where the first $5,000 came from than there is for the second $5,000. So that's purely speculative. No, I guess much of the argument has been consumed by this theme, and it just seems to me it's totally irrelevant to the analysis we're required to do, because as I read the Nevada Supreme Court's decision, what they said is basically, okay, fine, let's assume that the jury did not have this robbery-felony-murder theory before them at all. What we're going to try to figure out is what would a hypothetical, reasonable jury presented only with the premeditated and premeditation and deliberation theory have still convicted. And they said yes. And now we are, I beg to differ with you, I think we're stuck with applying epidefference to that determination. And so it's really unreasonable. Meaning that it has to be unreasonable. Right. Yes, Your Honor. And it was unreasonable because the standard they apply in reaching that determination was sufficiency of the evidence, which the U.S. Supreme Court in Fahey v. Connecticut and Satterwhite v. Texas said is incorrect, that a harmless analysis or that a harmless error analysis is not the equivalent of a sufficiency of the evidence standard. And both the majority opinion, the dissenting opinion recognized that they found sufficient evidence. The Nevada Supreme Court even relied on another case. I think what they said is there's sufficient evidence for us to be confident beyond a reasonable doubt that a reasonable jury would have convicted him anyway. That's all they were saying. So if we don't accept your, what I would characterize as a misreading of the Nevada Supreme Court's decision in terms of the standard, are you out of luck? Because that's all I read you saying in the brief is that basically they apply to Jackson v. Virginia or whatever the traditional sufficiency standard is. I don't read the decision as doing that. They clearly articulated at the beginning, we have to find beyond a reasonable doubt whether a reasonable jury would, properly instructed, would nevertheless have convicted. And they say yes. And, Your Honor, if you look closer, the Nevada Supreme Court also relied on another State case, which was Hearn v. State, to say this is why we find the evidence sufficient. And that was a purely sufficiency of the evidence case. That was not a Stromberg error or constitutional error case. So the evidence, including the language of the dissent, is that they found sufficiency of the evidence. Except they didn't say that. They cited Cortitas and said we must review whether the instructional error is harmless beyond a reasonable doubt. That's not sufficiency of the evidence. Well, I do disagree with that interpretation. But I would say even under ad pediferens, we would not lose because the Court did not look at the totality of the circumstances. They looked only at the nature of the injuries, which was not a broad enough analysis that if this Court looks properly at all of the evidence, including the arguments that were made by the prosecution about it automatically being first-degree murder as soon as there is a robbery, that the Court's decision was still an unreasonable interpretation of the facts. Okay. Thank you very much for your argument. The case just argued is submitted.
judges: GRABER, WATFORD, Bataillon